United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 10, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 02-20977
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC DESMOND THOMAS,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas

Before EMILIO M. GARZA, and DENNIS, Circuit Judges and HEAD,[1] District Judge.

HAYDEN W. HEAD, JR., District Judge:

Eric Desmond Thomas appeals his convictions for one count of conspiracy with intent to distribute cocaine base under 21 U.S.C. § 846 and one count of possession with intent to distribute cocaine base under 21 U.S.C. § 841 and his life sentence enhanced by 21 U.S.C. § 841(b)(1)(A).

_____

[1]District Judge of the Southern District of Texas, sitting by designation.

Thomas challenges his convictions on four grounds: (1) the district court refused to quash count one, which alleged a conspiracy without alleging the existence of a co-conspirator; (2) the district court erred in giving the jury a "Pinkerton Charge"; (3) the district court erred in refusing to require the government to identify a confidential informant; and (4) the district court erred in admitting the defendant's two prior felony drug convictions to prove knowledge and intent. Finally, Thomas argues that his sentence should be set aside because the district court did not follow the procedures of 21 U.S.C. § 851(b) for enhancement sentencing. The Court affirms the convictions and the sentence.

## I. BACKGROUND

On September 19, 1995, a confidential informant ("CI") notified Officer Terry Bryant of the Houston police department that a man named Tommy Lee wanted to sell the CI two kilograms of crack cocaine. Officer Bryant's plan was to reject the crack cocaine when he received it and to claim that he wanted powder cocaine. This ruse would enable the police to arrest persons in the delivery car because the original offering of crack cocaine would be returned to their possession.

Working undercover, Officer Bryant arranged a meeting with Tommy Lee at a restaurant at 9:00 p.m. that night. The CI drove with Officer Bryant to the restaurant and, once there, introduced Bryant to Tommy Lee. Tommy Lee borrowed Officer Bryant's cell phone and placed two calls to an unidentified person to arrange for the delivery of the cocaine to the restaurant. Shortly thereafter, Tommy Lee pointed out a royal blue Ford Taurus, driven by an unidentified black male, as the automobile pulled into the restaurant parking lot. Tommy Lee entered the Ford Taurus and retrieved a shoe box containing what appeared to be crack cocaine for Officer Bryant.

2

Following through on his plan, Officer Bryant rejected the crack, claiming that the deal was for powder cocaine. Tommy Lee returned the shoe box and its contents to the Taurus and the Taurus drove off.

Officer Bryant advised surveillance officers via radio that the cocaine was in the royal blue Ford Taurus. Police officers in the vicinity of the restaurant spotted the Taurus and a chase ensued. The driver tossed the shoe box out of the window. Officers took custody of the box and its contents. Laboratory results of the contraband revealed that it contained 1.8 kilograms of cocaine base at 69.1% purity, which had a street value of approximately $100,000 per kilogram.

As the crack cocaine was recovered, other officers pursued the Taurus and arrested Thomas, the driver, when the chase ended. Thomas had cellophane bags on his person, as well as a cellular telephone, an extra phone battery, and a set of keys in the vehicle. The telephone number of the cellular phone matched the number recorded on the officer's cellular phone, which Tommy Lee had borrowed to call the "unidentified person."

On October 30, 1995, a grand jury in Houston, Texas returned a two-count indictment, charging defendant Thomas with conspiracy to possess crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 846, 841 (a)(1), (b)(1)(A)(iii) and possession with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841 (a)(1), (b)(1)(A)(iii). Thomas pled not guilty. His case proceeded to trial. His first jury trial deadlocked and ended in a mistrial. At a second jury trial held on April 14, 1996, Thomas was found guilty on both counts. Because of his two prior felony drug convictions, Thomas received mandatory life imprisonment under 21 U.S.C. § 841 (b)(1)(A).

## II. DISCUSSION

### 1
### *Sufficiency of the Indictment*

Thomas challenges his conviction for conspiracy with intent to distribute cocaine base pursuant to 21 U.S.C. § 846. He argues that the district court erred in failing to quash the conspiracy count because the indictment failed to allege the existence of a co-conspirator. Count one of the indictment, the conspiracy count, alleged that:

> On or about September 19, 1995 in the Houston Division of the Southern District of Texas, Eric Desmond Thomas, a/k/a Eric Derrick Thompson, defendant herein, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree to possess with intent to distribute the Schedule II controlled substance, cocaine base. In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(iii) and 846.

In a motion to dismiss the indictment prior to the first trial, Thomas stated: "Count One of the indictment does not allege the person or persons with whom the Defendant is alleged to have conspired to commit this offense." In addition, Thomas orally objected to admission of Tommy Lee's testimony under Rule 801(d)(2)(E), the co-conspirator exception, at the end of the first day of his first trial, stating: "they didn't allege a person in the indictment who the conspiracy was with, and I object that they haven't at this point proven up that there is a conspiracy." The district court overruled the objection, reasoning that there was no need for the government to prove a conspiracy by the start of the trial as long as the government proved it at some point. The court further stated that "with respect to not alleging Tommy Lee as the other conspirator, certainly there is no surprise to the defendant that the government is putting on this evidence. It was laid out in detail in prior pleadings, as well as in prior motions and hearings." In the second trial, the defendant orally re-urged the motion to quash, stating: "I would also object again and re-urge my

4

motion to quash the indictment because the count of the indictment does not allege the members or anyone among the conspirators whom the Defendant is alleged to have conspired with." The court denied the motion.

"An indictment is sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and ensures that there is no risk of future prosecutions for the same offense." *United States v. Sims Bros. Constr., Inc.*, 277 F.3d 734, 741 (5th Cir. 2001), *reh'g denied*, 31 Fed.Appx. 837, --- F.3d ----, 2002 WL 243393 (5th Cir. 2002). The elements of a conspiracy to distribute a controlled substance under 21 U.S.C. § 846 are "(1) an agreement between two or more persons to violate the narcotics laws; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy." *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2003) (citing *United States v. Gallardo-Trapero*, 185 F.3d 307, 316-17 (5th Cir. 1999)).

"Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged." *United States v. Ramirez*, 233 F.3d 318, 323 (5th Cir. 2000), *overruled on other grounds by United States v. Longoria*, 298 F.3d 367 (5th Cir. 2002). In this case, the indictment follows the statutory language of 21 U.S.C. §§ 841(a), 846.[2]

---

[2]21 U.S.C. § 841(a) states in pertinent part: "it shall be unlawful for any person knowingly or intentionally – (1) to ... possess with intent to ... distribute ... a controlled substance." 21 U.S.C. § 846 states: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

5

Thomas contends that the indictment does not allege the first element of conspiracy, an agreement between two or more persons, because it fails to identify a co-conspirator by name or by including the words "and others known and unknown to the grand jury." Additionally, Thomas asserts that there are only two persons with whom he could have conspired–the CI and Tommy Lee–and that he cannot be convicted of conspiring with a confidential informant as a matter of law. Furthermore, he asserts that Tommy Lee cannot be considered a co-conspirator because he was not prosecuted or even alleged in the indictment.

In support of his argument that the indictment is insufficient, Thomas cites *United States v. Lance*, 536 F.2d 1065, 1068 (5th Cir. 1976) for the proposition that "a person can be convicted of conspiring with persons whose names are unknown so long as the indictment asserts that such other persons exist and the evidence supports their existence." In cases challenging the sufficiency of the evidence to convict, this language is frequently used to confirm that a person can be convicted of conspiring with unnamed or unknown persons. *See id.* (citing the above language in support of its holding dismissing the defendant's argument that he should have been acquitted of conspiracy because the named co-conspirator was acquitted); *United States v. Dukes*, 139 F.3d 469, 475 (5th Cir. 1998), *cert. denied*, 525 U.S. 894, 119 S.Ct. 215, 142 L.Ed.2d 177 (1998) (citing the above language to dismiss the defendant's sufficiency of the evidence challenge to his conspiracy conviction); *United States v. Price,* 869 F.2d 801, 804 (5th Cir. 1989) (citing the above language to dismiss the defendant's contention that evidence was insufficient to support his conspiracy conviction because his co-defendant was acquitted where the government proved the existence of unnamed co-conspirators); *United States v. Hernandez-Palacios*, 838 F.2d 1346, 1348-49 (5th Cir. 1988) (citing the above language in support of its holding that the district court

6

should have granted the defendant's motion for judgment of acquittal of the conspiracy counts because there was insufficient evidence of an agreement); *United States v. Klein*, 560 F.2d 1236, 1242 (5th Cir. 1977) (citing the above language in support of the finding that there was sufficient evidence to support jury verdict of conspiracy).

The alleged necessary language first appears in *United States v. Goodwin*, 492 F.2d 1141, 1144 (5th Cir. 1974).[3]  In *Goodwin,* the Court rejected the defendant's assertion that he should have been acquitted of his conspiracy charges under 21 U.S.C. § 963[4] because the charges against two of his co-conspirators, Ritsema and Hansen, were dropped.  *See id.*   The Court noted that the indictment charged that the defendant committed conspiracy with Ritsema and Hansen as well as "divers other persons whose names are to the Grand Jury unknown."  *See id.*  Additionally, evidence "was presented at trial which specified at least five other persons who were involved in the conspiracy."  *See id.*  Citing *Rogers v. United States*, 340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344, --- (1950), the Court held that "[a] person can be convicted of conspiring with

---

[3]Three prior Fifth Circuit cases cited by *Lance* address this issue without using precisely the same language.  *See United States v. Cabrera*, 447 F.2d 956, 957 (5th Cir. 1971) (per curiam) (affirming defendant's conviction for conspiracy to import cocaine in violation of 21 U.S.C. § 174 and finding no merit to the appellant's contention that he could not validly be found guilty of conspiracy because the co-conspirators named as co-defendants in the indictment were acquitted where defendant was charged with conspiring with an unnamed co-conspirator and a named but not charged co-conspirator); *Rosecrans v. United States*, 378 F.2d 561, 567 (5th Cir. 1967) (finding that the defendant's plea of guilty to conspiracy was unaffected by the later acquittal of his named co-defendants where he was charged with conspiring with "divers other persons to the grand jury unknown" and the evidence adduced at trial showed that the defendant conspired with persons other than the named co-defendants); *Jenkins v. United States*, 253 F.2d 710, 711 (5th Cir. 1958) (noting that "[t]he acquittal of all of the other defendants charged with the appellant does not establish his innocence particularly since others who were not defendants were alleged to be conspirators.").

[4]21 U.S.C. § 963 states: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

7

persons who are not identified by name in an indictment so long as the indictment asserts that such persons exist and the evidence supports such an assertion." *See id.*

*Rogers* does not, however, address the requirements of an indictment in a conspiracy claim. Rather, *Rogers* states that "at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown." *Rogers*, 71 S.Ct. at 443 (holding that subpoenaed witness could not refuse to identify person to whom she gave communist books on the grounds that she would incriminate herself in the crime of conspiracy to violate the Smith Act because guilt of conspiracy can be established without proof of identity of other parties to the conspiracy).

As previously stated, the government's use of statutory language in the indictment, as was done in this case, is generally sufficient to sustain the indictment. *See Ramirez*, 233 F.3d at 323. Moreover, the Court finds that the indictment is sufficient because the involvement of another person acting in concert with Thomas is implicit in the use of the words "combine, conspire, and confederate."[5] The requirements of *Goodwin* are met (1) because of the implicit existence of the unknown co-conspirator and (2) because the evidence presented at trial amply establishes that the defendant conspired with Tommy Lee to deliver and attempt to sell crack cocaine to Officer

---

[5] "Combine" is defined as "1a: to bring into such close relationship as to obscure individual characters: merge b: to cause to unite into a chemical compound 2: intermix, blend 3: to possess in combination 1a: to become one b: to unite in form a chemical compound 2: to act together." WEBSTER'S NEW COLLEGIATE DICTIONARY 221 (1981). "Conspire" is defined as "1a: to join in a secret agreement to do an unlawful or wrongful act or to use such means to accomplish a lawful end b: scheme 2: to act in harmony." *Id*. at 240. "Confederate" is defined as "united in a league: allied." *Id*. at 234.

8

Bryant.  Finally, Thomas' assertion that he cannot be convicted of conspiracy with Tommy Lee

because Tommy Lee was unindicted is controverted by Fifth Circuit precedent.  *See, e.g., Lance,*

*supra* (recognizing that persons can be convicted of conspiring with persons whose names are

known but are not prosecuted).

Thomas has not demonstrated reversible error.  Accordingly, the Court affirms Thomas'

conspiracy conviction.

2

*The Pinkerton Charge*

Thomas next argues that because the conspiracy charge was flawed, the district court

erred in giving the jury a "Pinkerton Charge"–that if they found the defendant guilty of

conspiracy, they could find him guilty of any substantive act committed in furtherance thereof.

The court's charge followed precedent:

> A conspirator is responsible for offenses committed by other conspirators if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, or as a foreseeable consequence of, the conspiracy.
>
> Therefore, if you have first found a defendant guilty of the conspiracy charged in Count One and if you find beyond a reasonable doubt that during the time the defendant was a member of that conspiracy, other conspirators committed the offenses in Count Two in furtherance of or as a foreseeable consequence of the conspiracy, then you may find the defendant guilty of Count Two even though the defendant may not have participated in any of the acts which constitute the offenses described in Count Two.

*Fifth Circuit Pattern Jury Instructions: Criminal* § 2.22 (2001).  Thomas' argument fails because

the Court found no error in the conspiracy charge and conviction, and the *Pinkerton* charge

correctly stated the law.  *See Pinkerton v. United States*, 328 U.S. 640, 645, 66 S.Ct. 1180, 1183,

9

90 L.Ed. 1489, ---- (1946); *United States v. Dean,* 59 F.3d 1479, 1490 n. 18 (5th Cir. 1995) ("[A]t a minimum, a proper *Pinkerton* instruction should at least state clearly that the defendant can be convicted of a substantive crime committed by his co-conspirator in furtherance of the conspiracy.") (citing *United States v. Basey*, 816 F.2d 980, 998 (5th Cir. 1987)).

3

*Disclosure of the confidential informant's identity*

Thomas next challenges the district court's denial of his request to compel the disclosure of the confidential informant's identity. This Court reviews the district court's grant or denial of disclosure of an informant for abuse of discretion. *United States v. Wilson*, 77 F.3d 105, 111 (5th Cir. 1996). The district court weighs three factors to determine whether to grant or deny disclosure of an informant's identity: "(1) the level of involvement in the alleged criminal activity, (2) the helpfulness of disclosure to any asserted defense, and (3) the government's interest in non-disclosure." *Id*.

The district court properly applied this three part test at an *in camera Roviaro* hearing prior to the first trial. The court found that the CI had no prior connection to the defendant, that he was a tipster who was involved in the initial meeting with a third party, and that, thereafter, his role was reduced to a possible observer. The court found that the government had a high interest in non-disclosure because the officers familiar with the individual involved in the crime believed that the CI faced a realistic threat. The court found the defendant's speculation that the CI might have observed the events insufficient to outweigh the possible threat to the CI if his or her identity were revealed.

Just prior to the second trial, threats against the CI surfaced in which someone was able to describe what he or she was wearing at the *in camera* hearing. The district court recognized this additional threat and again found that it outweighed the defendant's speculation that the CI could have witnessed the drug delivery. The Court finds no abuse of discretion.

4

*Admission of the 404(b) evidence*

Thomas objects to the admission of his two prior felony drug convictions under F.R.E. 403, 404(b). The Court reviews evidentiary rulings for abuse of discretion. *United States v. Peters*, 283 F.3d 300, 312 (5th Cir. 2002), *cert. denied*, 536 U.S. 934, 122 S.Ct. 2612, 153 L.Ed.2d 797 (2002).

Over the defendant's objection, the trial court admitted Ralph Saldivar's testimony regarding a "pen packet" obtaining the defendant's two prior felony drug convictions. The trial court reasoned that "the fact that this is a cocaine–related offense and his prior convictions were also cocaine possession offenses makes it relevant and makes it relevant to an issue other than character and makes it sufficiently probative to outweigh the admittedly prejudicial impact."

"Rule 404(b) of the Federal Rules of Evidence prohibits the admission of evidence of other crimes or bad acts to prove the character of a person. Such evidence may, however, be admitted to prove intent." *United States v. Parsee*, 178 F.3d 374, 380 (5th Cir. 1999), *cert. denied*, 528 U.S. 988, 120 S.Ct. 450, 145 L.Ed.2d 366 (1999). In *United States v. Beechum*, this Court outlined a two-step test to determine the admissibility of evidence of a defendant's prior wrongful acts. 582 F.2d 898, 910 (5th Cir. 1978). "Under *Beechum*, evidence of extrinsic

11

offenses is admissible if it is (1) relevant to an issue other than the defendant's character, and (2)

the incremental probative value of the evidence is not substantially outweighed by the danger of

unfair prejudice to the defendant." *Peters*, 283 F.3d at 312. The district court properly applied

the *Beechum* test to admit the testimony that Thomas had previously been convicted of possession

of cocaine and possession of a controlled substance. First, the issue of intent is material to

prosecution of drug trafficking offenses; that issue was raised by Thomas' plea of not guilty. *See*

*id*.; *Fifth Circuit Pattern Jury Instructions: Criminal* § 2.87 (2001). Second, the district court

properly explained that the evidence of the defendant's prior convictions for cocaine-related

offenses "is probative of the Defendant having the requisite state of mind or intent to participate in

the present cocaine-related offenses." *See Parsee*, 178 F.3d at 380. Finally, the district court

minimized any prejudicial effect by instructing the jury that it could consider the bad acts for the

limited purpose of intent. *See id.* The Court finds no abuse of discretion.

5

*The § 851(b) Colloquy*

Thomas challenges his mandatory life sentence enhanced by 21 U.S.C. § 841(b)(1)(A)

because he had two prior felony drug convictions.[6] He argues that the district court committed

---

[6]Thomas was first convicted on May 28, 1989, for possession of cocaine. He was seventeen years old at the time and he was sentenced to deferred adjudication and probation for ten years. On January 5, 1991, Thomas was convicted for possession of a controlled substance. On April 24, 1991, his probation was revoked and he was sentenced to eight years in prison for the first and the second convictions concurrently. Thomas served just under a year in prison and he was released on parole on April 7, 1992. Both convictions were in the 359th District Court of Montgomery County, Texas. Under the guideline provisions enumerated in the pre-sentence investigation report (PSI) for the present offense, Thomas had a total offense level of 38 and a criminal history category of IV for a guideline range for imprisonment of 292 to 365 months.

12

reversible error by failing to conduct the colloquy required by 21 U.S.C. § 851(b). Because Thomas did not raise this claim in the district court, the Court reviews the district court's decision for plain error and determines whether any such error affected the defendant's "substantial rights." *See* FED. R. CRIM. PROC. 52(b); *United States v. Dodson*, 288 F.3d 153, 161-62 (5th Cir. 2002), *cert. denied*, 537 U.S. 888, 123 S.Ct. 32, 154 L.Ed.2d 150 (2002) (relying on Rule 52(b) to apply plain error review where defendant raises for the first time on appeal objection to the government's failure to file criminal information in compliance with § 851(a)). *Cf. United States v. Vonn*, 535 U.S. 55, --, 122 S.Ct. 1043, 1046, 152 L.Ed.2d 90, --- (2002) (holding that a defendant who lets a Rule 11 error pass without objection in the trial court has the burden to satisfy the plain error rule).

21 U.S.C. § 851 establishes a three-step procedure to enhance a sentence:

(a)    The filing of an information by the government describing the prior convictions;

(b)    A colloquy, given by the district court after conviction, but before sentencing, asking the defendant whether he admits or denies the previous convictions, and informing him that he must challenge the prior convictions before sentencing, and that challenges may not be raised thereafter;[7]

---

[7]Section 851(b) states in full:  If the United States Attorney files an information under [section 851], the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence. 21 U.S.C. § 851(b) (West 2003).

13

(c)     The filing of a written response served on the United States by the defendant to the

information if he denies the allegations of prior convictions or challenges their validity

with opportunity for hearing on the challenges.

21 U.S.C. § 851 (a)-(c) (West 2003).

That the government filed an information alleging Thomas' two prior convictions is not at issue and is apparent from the record. The issue raised by the defendant is that the district court did not engage him in the colloquy described by § 851(b). The government concedes that the court did not give the § 851(b) colloquy. In substance, this provision requires the court to ask the defendant whether he admits or denies his prior convictions and to instruct the defendant that should he wish to challenge his convictions, he must do so before sentencing or be prohibited from raising them at any later date. 21 U.S.C. § 851(b).

There is ample evidence that the defendant could not deny the existence of his two prior convictions. First, the court admitted before the jury a "pen packet" containing the defendant's prior convictions at both of his prior trials. While the defendant objected to the admission of the "pen packet" on 404(b) relevance grounds, he neither denied that the convictions were his nor challenged their validity. Second, the presentence investigation report (PSI) listed the defendant's prior convictions as well; yet, he failed to file written objections to the PSI in compliance with FED.R.CRIM.P. 32(f) challenging the guideline calculations of the PSI. Finally, even though the government filed information of prior convictions in compliance with § 851(a), the defendant failed to file a written response denying the information pursuant to § 851(c).

14

This Court has held that a district court's failure to give the § 851(b) colloquy does not affect the defendant's substantial rights where the "defendant failed to comply with the procedures of § 851(c) to challenge the convictions and never revealed what challenges he was prepared to level." *United States v. Majors,* 328 F.3d 791, 797 (5th Cir. 2003) (citing *United States v. Garcia*, 954 F.2d 273, 277-78 (5th Cir. 1992)). *See also United States v. Fragoso*, 978 F.2d 896, 903 (5th Cir. 1992).

Thomas attempts to evade a finding that the error did not affect his substantial rights by arguing that even though he failed to comply with § 851(c), he challenged his prior conviction at sentencing in the following exchange:

| THE COURT: | Mr. Thomas, I have not received any written objections to the presentence report. Have you reviewed it with your client? |
|---|---|
| MR. JACOBS: | Yes, we have, Your Honor. We do have one matter, two that we would like to bring to the Court's attention ... |
| THE COURT: | Certainly. |
| MR. JACOBS: | On page 5 of the report, Your Honor, there is some details of an offense on May 28th, '89 in which the defendant was arrested with one Raymond E. Power. Mr. Thomas wanted me to relate to the Court that at the time the quantity of marijuana found and the 10 rocks of crack cocaine were actually found on the person of Mr. Raymond E. Power. Mr. Thomas himself, there was not found on his person or in his possession any items of a controlled substance, however, they were together in the car. Mr. Thomas then with – I don't remember the name of the counsel – but counsel at the time took probation from the Court because he was in the car; but the marijuana and the rocks were actually found on the person of Mr. Power, and nothing was found on the person of Mr. Thomas. |

In his appellate briefs, Thomas asserts that the above explanation of his prior conviction laid the basis for an ineffective assistance of counsel challenge to one of his prior convictions. Thomas further asserts that had the trial court given the defendant the prescribed warning, he

"would have been put on notice of the need to immediately challenge the prior conviction." Instead of challenging his conviction at sentencing or even laying a factual basis for a challenge to a conviction, the Court finds that Thomas merely attempted to minimize his role in the prior crime. Simply labeling this minimization an "ineffective assistance of counsel" challenge in the appellate briefs does not create the required challenge.

Moreover, because his purported challenge, ineffective assistance of counsel, is a constitutional challenge, *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, --- (1984), "had he raised [this] challenge before the district court, he would have had to comply with section 851(c)(2)'s requirement to set forth 'with particularity' any constitutional challenge to a prior conviction and 'the factual basis therefor.'" *United States v. Gaviria*, 116 F.3d 1498, 1525 (D.C. Cir. 1997) (citing 28 U.S.C. § 851(c)(2)). Yet aside from his claim at sentencing that the drugs were on another person in the car, Thomas offers no factual basis in support of his purported challenge. He has never filed an affidavit stating that his plea was involuntary or that he was actually innocent of the prior crime. Accordingly, Thomas still cannot satisfy the requirements of § 851(c)(2). *Gaviria*, 116 F.3d at 1525 (holding that where the defendant offered no factual support for his constitutional challenges on appeal, the district court's failure to comply with § 851(b) was not prejudicial). Moreover, he has wholly failed to demonstrate good cause for his failure to make a timely challenge and his objections are therefore waived. 21 U.S.C. § 851(c)(2).

Because Thomas did not and cannot comply with § 851(c), this Court finds that the district court's § 851(b) omission did not affect the defendant's substantial rights. *See Garcia*, 954 F.2d at 277 ("A defendant who wishes to challenge prior convictions being used for

16

enhancement purposes has available to him the comprehensive procedures of § 851(c), but he must give advance notice to the court and the government of the basis for his challenge."). *See also Majors,* 328 F.3d at 797 (holding the district court's 851(b) omission harmless where the defendant (1) failed to comply with § 851(c) and (2) did not reveal to the district court a basis for challenging his prior conviction); *Fragoso,* 978 F.2d at 902.

Accordingly, the sentence of the district court is AFFIRMED.

## III. CONCLUSION

For the reasons explained above, the judgment of conviction and the sentence are AFFIRMED.